Filed 12/30/24  P. v. Dew CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082583 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR61373) |
| DAVID LEON DEW, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Arlene A. Sevidal and Susan Elizabeth Miller, Deputy Attorneys General for Plaintiff and Respondent.

Defendant and appellant David Leon Dew[1] appeals from an order denying his Penal Code section 1172.6[2] petition for resentencing of his 1983 second degree murder conviction. This is Dew's second section 1172.6 resentencing petition. In 2022, we affirmed the trial court's order that denied his first petition after an evidentiary hearing, holding substantial evidence supported the court's findings. (*People v. Love, supra*, D078754.) The trial court likewise denied his second section 1172.6 petition following an evidentiary hearing. Dew contends the court's ruling that he was guilty of murder under current law, including its finding he was a major participant who acted with reckless disregard for human life, lacks sufficient evidence in part because the court improperly considered hearsay evidence. The People respond that because Dew had already raised this claim in his first section 1172.6 petition, he is barred from relief by the law of the case doctrine. They argue in any event that the court's ruling is supported by substantial evidence even without the challenged evidence, which they maintain was properly admitted. While we decline to apply law of the case, we agree with the People's latter contention, and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The factual background is taken from our prior opinion, in which we summarized testimony from the joint preliminary hearing of Dew and his

---

[1] Dew is also known as David Love, as indicated in our prior opinion on Dew's first section 1172.6 petition. (*People v. Love* (Apr. 18, 2022, D078754) [nonpub. opn.].) We refer to him as Dew in this opinion.

[2] Undesignated statutory references are to the Penal Code.

2

codefendant, Steven Ragland.[3]  We also take some of the procedural background from our prior opinion.

*The Killing*

"In 1982, Claude County lived in an apartment in Ocean Beach.  On the afternoon of Thanksgiving Day, November 25, 1982, County's friend George went looking for County because he had not shown up for his usual morning coffee for several days and did not show up for a planned Thanksgiving dinner.  George found County dead on the floor of County's apartment, with his hands tied behind his back, his feet bound, and a towel over his head.  County's television, stereo, and two long-necked wine bottles were missing.  George called the police.  County's apartment had been ransacked, and there was blood on the walls, furniture, a bowling trophy, a bowling pin, and on a knife with a two-inch blade.

"An autopsy revealed County had bruised lips, broken teeth, breaks and discoloration on his tongue, a broken nose, and 'line-like' injuries above and behind his right ear and to the back of his head.  Although County did not have a 'skull fracture, as such,' there was an area of abrasion, bruising, and bleeding at the base of his brain.  There was vomit in County's nose, mouth, trachea, lungs, and stomach.  A forensic pathologist determined County's cause of death was 'cardiorespiratory failure, due to the injuries to his head, which would . . . not only include the blows to the back of his head, the blows to his mouth, but also the inhalation of the vomit.'  County had not sustained any fatal knife wounds.

---

[3]    In our factual summary, we included evidence admitted and excluded as to Dew, but considered only the evidence properly admitted as to him in considering whether substantial evidence supported the trial court's ruling. (*People v. Love, supra*, D078754.)

"Two days before County's body was found, [Dew] drove in his van to a gathering at his friend Charles's apartment. An acquaintance of [Dew's] on his way to the gathering stopped at the van to talk to [Dew]. County's television and stereo were inside the van, and the two long-necked wine bottles were nearby. [Dew] offered to sell the television and stereo to the acquaintance for $150, so the acquaintance left to make a phone call to see if he had an interested buyer. When the acquaintance returned to the van, no one was there and the items were gone.

"Meanwhile, Charles was returning to his apartment and encountered [Dew] out front. [Dew] offered to sell Charles the television and stereo, and Charles bought them both for a total of $90. [Dew] helped carry the items up to Charles's apartment. Charles dealt only with [Dew] regarding this transaction.

"Inside the apartment, a friend named Ramona asked Ragland about buying the wine bottles. [Dew] interjected and offered to sell them for $20. [Dew] and [Roy] Patton then argued over which of them owned the wine bottles, with [Dew] asserting, 'Those are my mother fucking bottles.' After tussling with Patton, [Dew] sold the wine bottles to Ramona for $10.

"During the gathering, Ramona noticed something red on Ragland's shoe and asked him what it was. Ragland claimed it was wine from a broken bottle. But [Dew] walked by and said Ragland had cut his foot and told him to '[w]ash that shit off.'

"The day after Thanksgiving, Ramona overheard [Dew] say to Ragland, 'You couldn't even knock him out.'

"Shortly after Thanksgiving, Charles sold County's television and stereo to a friend for $125. [Dew] drove Charles to the friend's house to deliver the goods." (*People v. Love, supra*, D078754.)[4]

*Dew's Guilty Plea and Sentencing*

"In April 1983, 'wish[ing] to avoid the possibility of a 25-[year-to-]life commitment' if convicted of first degree murder, [Dew] entered into a plea bargain under which the prosecutor allowed him to plead guilty to second degree murder, which carried a maximum possible sentence of 15 years to life.

"As the factual basis for his guilty plea, [Dew] stipulated to the transcript of the preliminary hearing and the following statement by the prosecutor:

" '[O]n November 23rd, 1982, Roy Patton, [Dew], and Steven Ragland entered the apartment of [ ]County . . . with the intent to steal. Once inside the apartment, there was a struggle with [ ] County in which all three of the persons participated. That during the course of that struggle and while things were taken from the apartment, that is, a television set and a stereo

---

[4] The court excluded the following preliminary hearing evidence as to Dew, but admitted it as to Ragland: "Ramona testified she confronted Ragland on the Sunday after Thanksgiving about the red stain on his shoe. Ragland admitted it was blood and confessed he had gone with [Dew] and Patton to rob someone. Ragland said he knocked on the door to make sure no one was home, but the victim answered the door so Ragland hit him on the head. The victim fought back and grabbed a trophy to defend himself. When Ragland could not subdue the victim, [Dew] 'came in and took over the fight.' [Dew] tied up the victim and told Ragland to '[p]ut the stuff in the van.' [Dew] handed a knife to Patton and told him to 'finish it.' When Ragland returned to the room, the victim was no longer moving. [¶] James C. and Ragland's brother testified they were present when Ragland confessed to Ramona. Their testimony was substantially similar to Ramona's." (*People v. Love, supra*, D078754.)

and two wine bottles, as well as the wallet of [ ] County and other personal property, . . . [ ] County died.  And he died as a proximate result of the injuries inflicted on him during the course of that struggle.'[5]

"During the plea colloquy, the court asked [Dew], 'You understand . . . that if I accept your plea of guilty, I am going to take those facts as being true.  Do you understand that?'  [Dew] responded, 'I understand it.'  After confirming with [Dew] that his guilty plea was knowing and voluntary, the court accepted the plea.

"The court sentenced [Dew] to prison for 15 years to life."  (*People v. Love, supra*, D078754.)

*Dew's First Petition for Resentencing, April 2021 Evidentiary Hearing and Ruling*

"In January 2019, [Dew] filed a petition for resentencing under section 1170.95.  He asserted in the petition that the record showed 'unequivocally' that his murder conviction was based on the former felony-murder rule, and that he could not be convicted of murder under the new law.  . . .  The trial court issued an order to show cause why relief should not be granted.  The prosecution responded to the merits of [Dew's] petition, arguing he could still be convicted under the new felony-murder standard because he was a major participant in the underlying felony and acted with reckless indifference to human life.  (§ 189, subd. (e)(3).)

"In support, the prosecution sought to admit transcripts of the preliminary hearing, change of plea hearing, and sentencing hearing; and the probation officer's report.  The prosecution argued these record[s] were

---

5    Though Dew's guilty plea purported to be under *People v. West* (1970) 3 Cal.3d 595, he nevertheless proceeded to stipulate to the preliminary hearing transcript and facts set out above.

admissible because (1) the preliminary hearing and change of plea transcripts formed the factual basis for [Dew's] plea; (2) the prosecutor's correction of [Dew's] factual narrative at the sentencing hearing was an adoptive admission by Dew because he did not object when a reasonable person would have; and (3) the probation officer's report constituted reliable hearsay.

"In reply, [Dew] objected to (1) the hearsay portions of the preliminary hearing transcript, (2) the change of plea hearing and sentencing hearing transcripts, and (3) the probation officer's report.  He also argued the prosecution had not met its burden to prove beyond a reasonable doubt that he could be convicted under the new felony-murder standard.

"At the outset of the [April 2021] evidentiary hearing on [Dew's] petition, the trial court granted some of [Dew's] evidentiary objections.  First, the court struck the preliminary hearing testimony about Ragland's hearsay confession to Ramona.  . . .  Second, the court struck from the probation report any reference to Ramona's recounting of Ragland's confession.  The court reasoned that because it had already stricken the same statements from the preliminary hearing transcript, '[i]t wouldn't be right to say, well . . . , they don't come in through the preliminary hearing, but they come in through the probation reports.'

"The court overruled [Dew's] objections to the change of plea hearing transcript and the sentencing hearing transcript.  As to the latter, the court found the prosecutor's assertion that [Dew] handed Patton a knife and told him to 'finish it' was an adoptive admission by [Dew] because neither he nor his counsel objected.

"As to the merits, the court denied [Dew's] petition.  Although the court did 'not find that [Dew] delivered the fatal blow,' the court found the killing

7

occurred during 'a residential burglary gone wrong,' in which Dew 'was a direct aider and abettor' who 'acted in reckless disregard for human life.' Among other supporting factors, the court cited that Dew (1) 'was involved'; (2) 'did nothing to assist the victim once the victim was injured'; (3) 'profited from th[e] residential burglary after it was over'; and (4) told Patton to 'go finish him.' " (*People v. Love, supra*, D078754.)

## *Dew's First Appeal*

Dew filed a notice of appeal in April 2021. While his appeal was pending, the Legislature amended section 1172.6, subdivision (d)(3) "to clarify that '[t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.' (Stats. 2021, ch. 551, § 2.)" (*People v. Love, supra*, D078754.)

This court decided Dew's first appeal in April 2022. (*People v. Love, supra*, D078754.) We acknowledged the change in the law and "assume[d] without deciding" that the amended version applied. (*Ibid.*) We looked at the totality of the circumstances viewed in the light most favorable to the trial court's ruling, and applied the considerations set out in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Doing so, we held substantial evidence supported the court's finding Dew could be convicted of murder under the new felony-murder standard that he was a major participant in the underlying felony and acted with reckless indifference to human life. (*People v. Love, supra*, D078754.)

## *Dew's Second Section 1172.6 Petition*

About a month after this court issued its opinion, Dew filed a second section 1172.6 form petition for resentencing. In their initial response, the

8

People argued because there were no changed circumstances, collateral estoppel barred Dew from seeking relief. After the court issued an order to show cause, the matter proceeded to an evidentiary hearing in which the People sought to introduce the same evidence and add this court's prior opinion. Dew sought to admit some of the same items, but offered new evidence: a 1997 declaration from an attorney who had investigated Dew's murder conviction, Ragland's 1992 declaration, a 2005 declaration from Dew's original attorney, a 2002 statement from a correctional officer, and various certificates of accomplishment Dew had received.[6]

The trial court admitted the proffered evidence over the prosecutor's objections, stating it would "not giv[e] [the declarations] an incredible amount of weight, frankly, given they are not particularly reliable and since the People don't have an opportunity to confront and cross-examine the people that are making these declarations." The court excluded certain preliminary hearing testimony that was admitted only as to codefendant Ragland. It admitted evidence of Dew's exchange with the court during his change of plea

---

[6]     The attorney who investigated Dew's conviction stated she had obtained declarations from Alex Landon, an attorney who appeared on Dew's behalf for the preliminary hearing, and Ragland. She averred that based on those declarations, she believed in Dew's innocence. Ragland's declaration sought to give the "true circumstances and events surrounding the killing of . . . County." He averred that Dew was under the influence and not in County's residence when the physical altercation and robbery occurred but was waiting outside in a van. Dew's trial counsel, John Philipsborn, averred in a declaration that during pretrial proceedings he became aware of a codefendant's statement that tended to inculpate Dew. He recounted his advice to Dew about pleading guilty to second degree murder given the relatively short period of time they had based on how long Dew's case had been pending. He recalled based on the evidence and his memory that Dew "while involved in the planning of the burglary had driven a van to the victim's apartment, and had not actively participated in the struggle that led to the victim's death."

hearing, finding his remarks to be adoptive admissions he made when presented with the factual basis for his plea.[7]

Thereafter, the court denied Dew's petition: "I have read and considered your points and authorities. I have read and considered the transcript at the preliminary hearing and the change of plea. So I'm . . . not going to grant relief because I find that he was an active participant in . . . the robbery; that he acted in reckless disregard for human life; that he . . . was the provider of the knife, the knife that ended up being used; that . . . when the victim did not die, that he said—he said his cohorts finish it. [¶] So he was in a position where he was not actually delivering the fatal blow, but he was basically telling others to deliver the fatal blow, his co-conspirators and that he profited from . . . the robbery. And again, he had no regard for the life of [ ] County."

## DISCUSSION

### I. *Legal Principles*

"In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), which altered the substantive law of murder for accomplices in two respects. (Stats. 2018, ch. 1015, § 1(f).) First, with certain exceptions, it narrowed the scope of the felony-murder rule so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony

---

7    The court held this to be the case even though the record did not show that Dew was placed under oath.

10

and acted with reckless indifference to human life.' (§ 189, subd. (e)(1)-(3).) Second, it now requires that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) In other words, '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid*.) This aspect of Senate Bill No. 1437 eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*People v. Arellano* (2024) 16 Cal.5th 457, 467-468.)

"Senate Bill No. 1437 also created 'a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief.' " (*People v. Arellano, supra*, 16 Cal.5th at p. 468.) Under this procedure, the defendant may file a petition with required information stating he or she is eligible for relief; the court faced with a compliant petition must decide whether it makes a prima facie case for relief, and if so, issue an order to show cause. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) Absent a " 'prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony' " or the parties' stipulation of the petitioner's eligibility for relief, "the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill [No.] 1437." (*Id.* at pp. 708-709.) At the evidentiary hearing, the court acts as an independent factfinder to determine in the first instance whether the defendant is guilty of murder beyond a reasonable doubt under current law. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 123; *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) " 'A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is

11

insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.] 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.' " (*Strong,* at p. 709.)

We review for substantial evidence the court's findings following Dew's evidentiary hearing. (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270; see *People v. Cody* (2023) 92 Cal.App.5th 87, 111.) " 'The scope of our review for substantial evidence is well settled. The test is not whether the People met their burden of proving beyond a reasonable doubt that [a defendant in a section 1172.6 proceeding] was ineligible for resentencing, but rather "whether *any* rational trier of fact could have" made the same determination, namely that "[t]he record . . . disclose[s] . . . evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [as did the superior court]." ' [Citation.] [¶] ' "In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [superior court] could reasonably have deduced from the evidence. [Citation.] 'Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends.' " ' " (*Cody,* at p. 111.)

## II. *Law of the Case*

As stated, the People contend Dew's appeal is barred by law of the case. Under that doctrine, " ' "when an appellate opinion states a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to through its subsequent progress in the lower

court and upon subsequent appeal." ' [Citation.] The doctrine prevents parties from seeking appellate reconsideration of an already decided issue in the same case, ' "absent some significant change in circumstances." ' [Citation.] For the doctrine to apply, the point of law must have been presented and determined by the court, the issue must have been necessary to the prior decision, and application of the doctrine must not result in an unjust decision. [Citation.] But the doctrine does not apply ' "where the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations." ' " (*People v. Jimenez* (2024) 103 Cal.App.5th 994, 1006-1007.)

Thus, in *Jimenez*, this court declined to apply the doctrine in the face of a "significant intervening change in the law" (*People v. Jimenez, supra*, 103 Cal.App.5th at pp. 1006-1007) allowing consideration of a defendant's youth as a relevant factor on the issue of malice under current law. (*Id*. at p. 1008.) We held it was "in the interest of justice to give the trial court a meaningful opportunity to consider [the defendant's] youth 'as part of the totality of the circumstances germane to determining' whether he acted with malice under current law." (*Jimenez*, at p. 1008.)

The People's law-of-the-case argument is brief; they do not acknowledge the above-mentioned exception to the doctrine, but merely point out the similarities in Dew's arguments in his first and second petitions and assert our findings in the first opinion are binding on the trial court on his second petition. We are not persuaded, given the changes in the law referenced in our prior opinion. As we acknowledged, effective January 1, 2022, while Dew's first appeal was pending, the Legislature amended section 1172.6 to clarify that the burden of proof at a section 1172.6 hearing is beyond a reasonable doubt and a trial court's finding that there is substantial evidence

to support a conviction is insufficient to meet this burden. (§ 1172.6, subd. (d)(3).) It clarified the standards for the admissibility of evidence at the evidentiary hearing; section 1172.6, subdivision (d)(3) now provides: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed . . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

Though in our prior opinion we summarized the intervening change in the law and presumed it applied, Dew actually took advantage of the clarification after filing his second petition, proffering new evidence in part consisting of his counsel's declarations for the evidentiary hearing on that petition. (See fn. 6, *ante*.) As in *People v. Jimenez, supra*, 103 Cal.App.5th 994, we think it in the interest of justice to consider Dew's arguments, which account for the impact, if any, of the new evidence he presented. Under these circumstances, the law of the case doctrine does not apply. We decline to bar his appeal under it.

III. *Substantial Evidence Supports the Court's Findings that Dew was a Major Participant in the Underlying Felony and Acted with Reckless Indifference to Human Life*

As stated, under current law, "[a] participant in the perpetration . . . of a [robbery] in which a death occurs is liable for murder" if "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e)(3).) In this case, to deny Dew relief under section 1172.6 the trial court was required to find these circumstances beyond a reasonable doubt. (*People v. Strong, supra*, 13

14

Cal.5th at pp. 707-708.) It made those factual findings about Dew's involvement after considering the evidence presented by the parties.

In reaching its ruling, the court gave little to no weight to the new declarations of counsel and of Dew's codefendant Ragland (fn. 6, *ante*) that Dew submitted seeking to establish his innocence or his lack of direct participation in County's beating and robbery. As indicated above, on our review for substantial evidence, we must defer to the court as the fact-finder; we are without power to reweigh the evidence or reconsider the court's credibility findings. (*People v. Reed* (2018) 4 Cal.5th 989, 1006; *People v. Tice* (2023) 89 Cal.App.5th 246, 256 ["Substantial evidence does not mean evidence free of ambiguities or inconsistencies [citation], and it is the exclusive province of the trial judge or jury to determine the credibility of witnesses and the weight to be afforded any evidence"].)

Dew maintains that if we exclude the hearsay evidence from his preliminary hearing and the prosecutor's statements at his sentencing that should not have been treated as adoptive admissions, the original factual basis remains, but "[t]hat factual basis falls short of showing [his] liability beyond a reasonable doubt, particularly in light of the new evidence [he] produced . . . in the form of the declarations." This again asks us to reassess the trial court's credibility determinations, which we will not do.

Dew further argues, relying on *People v. Eynon* (2021) 68 Cal.App.5th 967 and *People v. Flores* (2022) 76 Cal.App.5th 974, that his stipulation to the facts concerning the robbery and County's death "did not constitute an admission to 'facts supporting liability on any particular theory,' and the generic pleading encompassed theories—such as natural and probable consequences . . .—that did not require the defendant to have acted with malice."

We disagree with Dew's view of his guilty plea. When a conviction results from a guilty plea, the record of conviction includes facts the defendant admits as " 'the factual basis for a guilty plea.' " (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211; accord, *People v. Das* (2023) 96 Cal.App.5th 954, 961-964 [record of conviction includes stated factual basis for defendant's guilty plea, but court could not rely on a factual recitation the defendant did not stipulate to].) Here this included not only Dew's preliminary hearing transcript, but also the specific statement describing his, Ragland's and Patton's actions on the night in question. And the statute "unambiguously provides that a trial court ruling on the merits of a resentencing petition 'may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony.' " (*People v. Davenport* (2023) 95 Cal.App.5th 1150, 1158 [plain reading of section 1172.6, subdivision (d)(3) compels the conclusion that a preliminary hearing transcript is admissible at a section 1172.6 evidentiary hearing; the statute creates a new hearsay exception applicable to merits hearings in section 1172.6 resentencing proceedings]; see also *People v. Robinson* (2024) 106 Cal.App.5th 854, 865.)

When Dew entered into his plea he did in fact specify a factual basis and theory about his role in the offense—his presence inside County's apartment and participation in the struggle leading to County's death. Thus, his plea constitutes evidence on his section 1172.6 petition from which the court concluded he could presently be convicted of murder under new section 189. Dew misplaces reliance on *Eynon* and *Flores*, involving assessments of defendants' eligibility at the prima facie stage in instances where they did not enter into similar stipulations. (*People v. Flores, supra*, 76 Cal.App.5th at pp. 987, 990 [petitioner did not admit or stipulate to any particular theory in

16

pleading no contest to second degree murder]; *People v. Eynon*, *supra*, 68 Cal.App.5th at p. 977 [same]; compare *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1030 [defendant at plea hearing "specifically admitted to shooting and killing two people and shooting and injuring a third person" making him "ineligible for relief as a matter of law"].)

We conclude, as we did before, that even without the hearsay and adoptive admission evidence, substantial evidence supports the court's findings with regard to the factors under *Banks* and *Clark*, which we summarized in our prior opinion. (*People v. Love*, *supra*, D078754.) Our conclusions there about the evidence showing Dew was a major participant remain valid: "First and foremost, [Dew] 'was present at the scene of the killing, in a position to . . . prevent the actual murder, and . . . his . . . actions . . . play[ed] a particular role in the death.' (*Banks, supra*, 6[1] Cal.4th at p. 803.) As the factual basis for his guilty plea, [Dew] acknowledged he entered County's apartment with Patton and Ragland to steal County's property. Once inside, the three perpetrators struggled with County. It is reasonable to infer from the nature of County's injuries and the presence of a bloody bowling pin, trophy, and knife, that one of the perpetrators used these objects to bludgeon and cut County *during the struggle in which* [*Dew*] *was participating.* [Dew's] participation in a three-on-one struggle facilitated the murder by preventing County from defending himself from the assailant inflicting the deadly blows. Additionally, the fact [Dew] had no fresh injuries shortly after the offense supports a reasonable inference he did not intervene to prevent the infliction of deadly blows once his cohort began bludgeoning County.

"[Dew's] presence at, and participation in, the underlying felony strongly supports the trial court's finding he was a major participant. (See

17

*Banks, supra*, 6[1] Cal.4th at p. 805 [finding, by contrast, that the defendant was not a major participant in a robbery felony murder because he was merely the getaway driver and '[d]uring the robbery and murder, [he] was absent from the scene, sitting in a car and waiting'].)

"Second, it is reasonable to infer [Dew] played a significant role in planning the crime because witnesses later saw the stolen goods in his van and he was the only perpetrator to sell and profit from the stolen goods. Indeed, [Dew] directly asserted his ownership vis-à-vis Patton at the gathering.

"Third, [Dew's] conduct ' "after lethal force was used" ' (*Banks, supra*, 6[1] Cal.4th at p. 803) also supports the finding he was a major participant. We infer from the fact County was still bound and had vomit in his mouth, nose, and airway when his body was found several days after the crime, that [Dew] did not render any aid at the scene or call for help after leaving the scene. (See *id.* at p. 807 [noting the defendant 'did not see the shooting happen . . . and could not do anything to . . . render assistance'].)" (*People v. Love, supra*, D078754.)

Equally valid are our conclusions about evidence establishing Dew's reckless indifference to human life: "Most significantly, [Dew] was physically present during the commission of the underlying felony. The United States Supreme Court has 'stressed the importance of presence to culpability.' (*Clark, supra*, 63 Cal.4th at p. 619, citing *Tison v. Arizona* (1987) 481 U.S. 137, 158.) Where 'the murder is a culmination or a foreseeable result of several intermediate steps . . . , "the defendant's presence allows him to observe his cohorts so that it is fair to conclude that he shared in their actions and mental state . . . . [Moreover,] the defendant's presence gives him an opportunity to act as a restraining influence on murderous cohorts. If the

18

defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders." ' (*Clark*, at p. 619.)

"As noted, [Dew] acknowledged as the factual basis for his guilty plea that he was present for, and participated in, the three-on-one struggle in which County sustained fatal injuries. Additionally, the record supports a reasonable inference that [Dew] did not intervene to prevent the murder once one of his cohorts began bludgeoning County. The record also supports a reasonable inference that [Dew] neither rendered aid at the scene nor summoned help after leaving County in an extremely vulnerable position—on the floor with his hands tied behind his back and a towel over his head, with serious injuries to his face and brain, and with vomit in his mouth, nose, and airway. (See *Clark, supra*, 63 Cal.[ ]4th at p. 619 [noting the United States Supreme Court and '[o]ther appellate courts have considered relevant a defendant's failure to provide aid while present at the scene']; [*In re*] *Scoggins* [2020] 9 Cal.5th [667,] 672 [finding no reckless indifference where, '[a]fter the shooting, [the defendant] walked over to [the victim] and checked if he was still breathing,' and then remained at the scene and was 'cooperative' with law enforcement].) These considerations strongly support a finding [Dew] acted with reckless indifference to human life.

"The duration of the felony weighs slightly against [Dew]. The fact a struggle occurred, County's apartment was ransacked, and his property removed support a reasonable inference that the duration of the felony was not insignificant. (See [*In re*] *Scoggins, supra*, 9 Cal.5th at pp. 680-681 [finding the duration 'very limited' where a planned-beating-turned-fatal-shooting 'lasted between a few seconds and three to five minutes'].) But it was not a prolonged kidnapping during which the victims were moved to a

different location before being murdered.  (See *Tison, supra*, 481 U.S. at p. 151.)

"[Dew's] knowledge of factors bearing on his cohorts' likelihood of killing also weighs only slightly against him.  [Dew] introduced evidence at the preliminary hearing showing Patton had previously lived with County. Thus, 'there was a chance [Patton] would be recognized, increasing the risk of violence in order to evade apprehension.' (*People v. Proby* (1998) 60 Cal.App.4th 922, 929.)  And, although nothing in the record indicates [Dew] had advance knowledge of factors indicating his cohorts' likelihood of killing County, a '[d]efendant's knowledge of such factors . . . may occur during the felony.' (*Clark, supra*, 63 Cal.4th at p. 621.)  [Dew] would certainly have become aware of his cohorts' likelihood of killing County when one or more of them began bludgeoning County with a bowling pin or trophy and cutting him with a knife.  Yet, the record supports the inference [Dew] did nothing at that point to prevent the murder or render aid.

"Finally, nothing in the record suggests [Dew] made any 'efforts . . . to minimize the risks of . . . violence during the felony.' (*Clark, supra*, 6[3] Cal.4th at p. 621; see *id.* at p. 622 [finding the defendant less culpable where he planned for his cohort to use an unloaded gun to rob a store 'after closing time, when most of the employees had left the building'].)  . . . [¶]  . . . We are satisfied that—even without considering the challenged evidence— substantial evidence supports the trial court's finding that [Dew] was a major participant in the underlying felony who acted with reckless indifference for human life.  Accordingly, the court did not err in denying [Dew's] petition for resentencing under section [1172.6]." (*People v. Love, supra*, D078754.)

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.